UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TAMMY DAHL,

        Plaintiff,

v.                                                                  Case No. 18-C-676

ANDREW M. SAUL,
Commissioner of Social Security

        Defendant.

**DECISION AND ORDER**

        Plaintiff Tammy Dahl filed this action pursuant 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. R. 15, 219–29. Dahl claims that the administrative law judge's (ALJ's) decision, which became the final decision of the Commissioner after the Appeals Council denied review, R. 1–6, is erroneous because (1) the ALJ violated Social Security Ruling (SSR) 00-4p by failing to resolve the conflict between the vocational expert's (VE's) testimony and the Dictionary of Occupational Titles (DOT) and (2) the ALJ failed to give adequate weight to the opinion of Dr. Ward Jankus, a consultative examiner. For the reasons that follow, the Commissioner's decision will be affirmed.

**BACKGROUND**

        On December 18 and 19, 2013, Dahl filed claims for DIB and SSI, respectively, alleging disability beginning October 4, 2013, due to right arm neuropathy, diabetes, high blood pressure,

high cholesterol, and hypothyroidism.  R. 15, 94, 109, 219–29.  Dahl's claims were denied, both initially on June 23, 2014, and upon reconsideration on March 30, 2015.  R. 15, 158, 166.  Dahl thereafter filed a written request for a hearing before an ALJ on April 9, 2015.  R. 172.  ALJ John Martin conducted a hearing on December 13, 2016, at which Dahl, who was represented by counsel, Dahl's husband and daughter, and a VE testified.  R. 35–37.

At the time of the hearing, Dahl was 51 years old and lived in a duplex with her husband and daughter.  R. 44–45.  Dahl, who is right-handed, testified that she has neuropathy in both hands, but her right is worse.  R. 45.  Regarding past work history, Dahl testified that she worked as a certified nursing assistant (CNA) in 2001, which required that she constantly stand and occasionally lift/roll people of various sizes.  R. 49–50.  Also in 2001, Dahl worked as a cashier/stocker and temp clerk, which involved standing on her feet and sometimes lifting up to 55–60 pounds.  R. 50–51.  In 2005 and 2007, respectively, Dahl worked at a nursing home and hospital, which involved similar standing and lifting requirements as her other CNA work.  R. 51–52.  In 2011, Dahl worked as a packager, which required constant standing and lifting up to 65 pounds.  R. 52–53.

When asked why she considers herself incapable of work, Dahl testified that she cannot lift; she is tired all the time; she experiences pain and numbness in her arms and legs due to neuropathy; her back "goes out"; she has feet and leg cramps; she experiences painful dry skin on her fingers; and she is very depressed.  R. 53–54.  When asked to rate her pain at the hearing on a scale of 1 to 10, with 10 being severe pain, Dahl answered: "Ten."  R. 54–55.  Dahl testified that she has diabetes, high cholesterol, and thyroid problems, for which she takes medications.  R. 55–56.  Dahl does not take medications for her pain or depression because they upset her stomach and can affect her blood sugar.  R. 56–57, 59.  Dahl also testified that she experiences pain and tingling in her

2

hands, which caused her to alter the way she performs various daily tasks, and that her right hand goes numb after five seconds of writing. R. 61–62. She also experiences varying blood sugar levels and at times loses her balance when walking. R. 66–67.

In a decision dated March 15, 2017, the ALJ concluded that Dahl was not disabled within the meaning of the Social Security Act since October 4, 2013. R. 22–23. To arrive at this conclusion, the ALJ considered the Social Security Administration's (SSA's) five-step sequential evaluation process. At step one, the ALJ determined that Dahl had not engaged in substantial gainful activity since October 4, 2013, her alleged onset date. R. 17. At step two, the ALJ found that Dahl had the following severe impairments: diabetes mellitus with peripheral neuropathy and essential hypertension. *Id.* At step three, the ALJ determined that Dahl did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18.

After reviewing the whole record, the ALJ concluded that Dahl had the residual functional capacity (RFC) to

> perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). She can lift, carry, push, and pull up to twenty pounds occasionally and similarly handle ten-pound weights on a frequent basis. She can sit for six hours, stand for six hours and walk for six hours during an eight-hour day. She is limited to no more than frequent reaching overhead and in other directions but is limited to occasional handling and fingering with the right hand. She cannot climb ladders, ropes, or scaffolds but may occasionally stoop, kneel, balance, crouch, crawl, or climb ramps and stairs. She should not work at unprotected heights or around moving machinery, should not operate motor vehicles and should avoid concentrated exposure to extreme cold or vibration.

R. 19. At step four, the ALJ determined that Dahl cannot perform any of her past relevant work. R. 21. Finally, the ALJ determined at step five that there exist jobs in significant numbers in the

3

national economy that Dahl could perform, including 75,000 housekeeping jobs, 97,000 information clerk jobs, and 20,000 cafeteria helper jobs. R. 22. Based on these findings, the ALJ concluded that Dahl was not disabled since October 4, 2013. *Id.* After the ALJ's decision became final, R. 1–6, Dahl commenced this action for judicial review.

**LEGAL STANDARD**

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the

4

evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

**A. Conflict Between VE Testimony and DOT**

Dahl identifies two errors for review, the first of which is that the ALJ erred in failing to resolve the conflict between the VE's testimony and the DOT in accordance with SSR 00-4p. Occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p. When an "apparent unresolved conflict" exists between the VE and the DOT, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled." *Id.* As part of the ALJ's duty to fully develop the record, the ALJ must inquire as to whether an inconsistency exists, and if it does, resolve the conflict by determining whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than on the DOT. *See id.*; *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.

2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record.").

As a threshold matter, Dahl has waived any challenge to the reliability of the VE's testimony, as neither Dahl nor her attorney questioned the VE at the administrative hearing. *See* R. 90; *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (holding that claimant forfeited argument about VE's testimony about job numbers by failing to object during hearing); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) ("Raising a discrepancy only after the hearing, as [claimant's] lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands—that is, with no questions asked that reveal any shortcoming in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did."); *see also Collins v. Berryhill*, 743 F. App'x 21, 26 (7th Cir. 2018) (rejecting a challenge to a VE's testimony for failure to object during the hearing).

Waiver aside, each of Dahl's criticisms nevertheless fails. Dahl first argues that the VE inappropriately guessed, with no foundation, about the number of jobs available to those who are, as a practical matter, one-armed. The VE testified that the hypothetical individual about whom the ALJ asked could perform work as a housekeeper, information clerk, and cafeteria attendant, but reduced the job numbers for the housekeeper and cafeteria attendant positions by 75% when considering a one-armed individual with the same limitations. R. 86–89. As Dahl acknowledges, "the ALJ did ask how the VE developed her reduction in the number of jobs available." Pl.'s Br., Dkt. No. 17, at 12; R. 90. In her answer, the VE explained:

> I look at information from the U.S. Department of Labor, Bureau of Labor Statistics for 2015 and for the estimated numbers per SOC Code. There is no data source that specifically identifies the number of jobs per DOT code, which is what [sic] required for Social Security. So I also look at the information under Job Browser Pro and make the best assessment as to which numbers seem most appropriate.

R. 90. Dahl claims this answer "is nothing more than a guess," Pl.'s Br., Dkt. No. 17, at 12, but she is mistaken. This is not a case where the VE's testimony was "conjured out of whole cloth." *See Donahue*, 279 F.3d at 446. Rather, the VE examined data from the Bureau of Labor Statistics, including codes from the Standard Occupational Classification (SOC) system, and data from Job Browser Pro, a private software program that provides job numbers for specific occupations by DOT code, *see Khuzaie v. Comm'r of Soc. Sec.*, No. 1:14-cv-00199-SLC, 2016 WL 1253537, at *14 (N.D. Ind. Mar. 30, 2016), compared the data, and then made her best assessment as to which numbers were most appropriate through the lens of her experience.

As the Supreme Court recently explained in *Biestek v. Berryhill*, "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities. See C. Kubitschek & J. Dubin, Social Security Disability Law & Procedure in Federal Court § 3:89 (2019). When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.' Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)." 139 S. Ct. 1148, 1152–53 (2019). *Biestek* held that even where a VE refuses to disclose private market survey data underlying her opinion on cross examination by the claimant's attorney, her opinion can still constitute substantial evidence sufficient to support a finding of non-disability. *Id.* at 1156. In this case, not only did Dahl's attorney not ask the VE for the supporting documentation, he elected not to even cross examine her. R. 90. The VE's

testimony thus stood not only unrefuted but unchallenged. Under these circumstances, the ALJ was entitled to rely on it in reaching his conclusions.

Dahl next argues that the VE's testimony that "[t]here's not a significant amount of writing or handling that would be required for the dominant hand in [the information clerk] position," R. 88, is inconsistent with DOT code 237.367-022, which provides in part that an information clerk (clerical) "[m]ay keep record of questions asked." That this position "may" require that a record of questions be kept does not mean that it must. Nor does the description specify how those questions are recorded. Dahl assumes it must be in writing via a pen or pencil, but the description could also include typing, which may be performed with a single, non-dominant hand. This part of the job description therefore does not create a conflict requiring resolution by the ALJ.

But even if a conflict existed, the conflict "is not so obvious that the ALJ should have pursued the question." *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). This is especially the case because the VE cited DOT code 237.237-018 (not 237.367-022), which is likely a speaking error on the VE's part or a transcription error at the hearing. R. 88. The VE likely meant to cite DOT code 237.367-018 (Information Clerk - Travel) the description for which does not mention writing. In any event, even without considering the information clerk position, the post-reduction national job numbers of 75,000 and 20,000 for housekeeper and cafeteria attendant jobs, respectively, are sufficient to support the ALJ's conclusion. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("[I]t appears well-established that 1000 jobs is a significant number.").

Dahl makes a similar argument with respect to the cafeteria attendant position. The VE cited DOT code 311.677-010 (Cafeteria Attendant), which states:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria or Restaurant (hotel & rest.).

R. 88. Dahl argues that this description makes it clear that she would be required to frequently use her right hand in this type of job, as a number of the tasks are of the kind that typically require use of both hands (e.g. carrying trays) or are performed using a dominant hand (e.g. pouring coffee). But that some of these tasks are typically performed with both hands or a dominant hand does not mean that they cannot be performed otherwise. Moreover, the VE specifically reduced the cafeteria attendant job numbers by 75% to account for a one-hand limitation. R. 89–90. Especially given this reduction, no apparent conflict existed that required resolution by the ALJ. That the DOT job description did not explicitly include the words "frequent handling" is no matter because the duties in the description involve such handling and because, even were this to create a conflict, the conflict is not so obvious that the ALJ needed to pursue it. *See Terry*, 580 F.3d at 478.

**B. Weighing of Dr. Jankus' Opinion**

The second issue Dahl raises is whether the ALJ properly weighed the testimony of Dr. Jankus, whom Dahl labels her "treating orthopedic specialist." Pl.'s Br., Dkt. No. 17, at 15. Dahl argues that the ALJ erred by not assigning controlling weight to Dr. Jankus under 20 C.F.R. § 404.1527. Contrary to Dahl's claim, however, Dr. Jankus is not a treating source but is a consultative examiner whose opinion is not entitled to controlling weight. R. 547–50; § 404.1527(a)(2) (defining "treating source" as an acceptable medical source "who has, or has had, an ongoing treatment relationship with [claimant]"); *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (citing *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005)); *Pazour v. Berryhill*, 363 F.

Supp. 3d 903, 911 (W.D. Wis. 2019). Dahl's contention that the ALJ erred in not giving Dr. Jankus' opinion controlling weight therefore fails.

Nor was the ALJ's analysis of Dr. Jankus' opinion otherwise improper. After his June 10, 2014 examination of Dahl, Dr. Jankus opined in his disability report that Dahl is "not able to tolerate firmly gripping vacuum handles – hammers, wrenches, screwdrivers, etc" with her right hand. R. 550. Dr. Jankus also opined that Dahl "can do a little bit of light manipulating [with her right hand] for basic self-care, but even that tends to be irritable for her and basically I do not doubt that she has pretty much switched over to doing everything left-handed at this point." *Id.* The ALJ gave considerable weight to Dr. Jankus' opinion that Dahl could do some manipulative tasks with her right hand and included such restrictions in the RFC. R. 18–19, 21. But the ALJ also noted that even were Dahl limited to jobs that could be performed with one hand—in effect, giving Dr. Jankus' opinion controlling weight—there nevertheless existed a significant number of jobs in the national economy that she could perform. R. 21–22. That the ALJ did not explicitly mention the regulatory factors in his analysis is therefore no matter. *See Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013) ("[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   6th   day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court